**EXHIBIT 1**

CAUSE NO. D-1-GN-14-001121

| | | |
|---|---|---|
| TIMOTHY DONAHUE, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| TOKYO ELECTRON AMERICA, INC., | § | |
| TOKYO ELECTRON US HOLDINGS, INC., | § | |
| | § | |
| Defendants. | § | 419TH JUDICIAL DISTRICT |

### DEFENDANTS' FIRST AMENDED ANSWER AND COUNTERCLAIMS

Defendants Tokyo Electron America, Inc. and Tokyo Electron US Holdings, Inc. (together, Defendants) file their First Amended Answer and Counterclaims to Plaintiff Timothy Donahue's Original Petition.

## I.
### GENERAL DENIAL

1.     As authorized by Rule 92 of the Texas Rules of Civil Procedure, Defendants generally deny all the matters pled by Donahue and ask the court to require Donahue to prove his charges and allegations by a preponderance of the evidence as required by the Constitution and laws of the State of Texas. TEX. R. CIV. P. 92.

## II.
### DEFENSES

Defendants state the following defenses but do not assume the burden of proof on any defense except as required by applicable law.

1.     Defendants affirmatively plead that Donahue has failed to mitigate his damages, or, to the extent he has mitigated damages, that they are entitled to a credit and offset for all amounts Donahue has earned or been paid from any source subsequent to his separation of employment.

2.     Defendants affirmatively plead that they did not act with malice or any other state of mind that would authorize an award of exemplary damages, and that any claim by Donahue for punitive or exemplary damages is barred by Defendants' good-faith efforts to comply with the law.

3.     Defendants affirmatively plead that all decisions relating to the employment of Donahue were made in good faith and based on legitimate, non-discriminatory, and reasonable business reasons other than those prohibited by law.

4.     Defendants affirmatively plead all statutory limitations on damages, including those set forth in Texas Labor Code § 21.2585.

5.     Donahue has failed to meet the administrative prerequisites necessary to file some or all of the claims contained in the Petition.

6.     Donahue has failed to timely file and/or serve this action within statutory prerequisites.

7.     Donahue's lawsuit and alleged damages are barred and/or limited by the after-acquired evidence doctrine.

Defendants reserve the right to amend this Answer to include additional affirmative defenses.

## III.
### COUNTERCLAIMS

#### FACTS

8.     Donahue is a former Media Producer for Tokyo Electron America, Inc. ("TEA"). On April 3, 2013, Donahue was placed on a sixty-day Performance Improvement Plan ("PIP"). As a Media Producer, Donahue was responsible for, among other things, creating audiovisual

productions.  During the PIP period, Donahue's behavior and performance did not improve and, in some areas, worsened.  He was therefore terminated on June 3, 2013.

9.      While employed by TEA, Donahue signed an "Agreement for Confidential Information and Intellectual Property," dated September 16, 1996 (the "Confidentiality Agreement").  *See* Exhibit 1.  In the Confidentiality Agreement, Donahue promised not to disclose any "Information" to "any person, firm, or corporation."  "Information" was defined as "all information, tangible or intangible, which is secret, confidential or proprietary in nature and which concerns business or affairs of [TEA], its customers or suppliers, including, but not limited to, inventions, know-how, technical and business information and data, products, processes, developments and plans."

10.     In the Confidentiality Agreement, Donahue assigned TEA "all the right, title and interest in and to all inventions, improvements, discoveries, or technical developments" that Donahue, solely or jointly with others, conceived during his employment with TEA.

11.     At the conclusion of his employment with TEA, on June 3, 2013, Donahue signed an Employee Termination Certification ("Certification").  *See* Exhibit 2. In the Certification, Donahue certified that he had either destroyed or returned all "Confidential Information" and copies of the same, "all documents or materials regardless of media," and "other property belonging to Tokyo Electron US Holdings, Inc., its subsidiaries and related affiliates."  In the Certification, Donahue also certified that he had complied and would continue to comply with the terms and conditions of the Confidentiality Agreement.  Donahue also promised to "preserve as confidential and not to disclose to any third party or use any and all Confidential Information of [Tokyo Electron US Holdings, Inc., its subsidiaries and related affiliates] (existing, potential or future)."  Under the Certification, "Confidential Information includes, without limitation, any

and all information of [Tokyo Electron US Holdings, Inc., its subsidiaries and related affiliates] concerning (i) methods, processes, formulas, trade secrets, procedures, innovations, inventions, discoveries, improvements, research or development and test results, specifications, data, know-how, computer programs, software, electronic codes, mask works, inventions, innovations, patents, patent applications, formats, formulas and all improvements, know-how, data, rights, and claims related to the foregoing; (ii) marketing plans, business plans, strategies, forecasts, unpublished financial information, budgets, projections, product plans and pricing; (iii) personnel information, including organizational structure, salary, and qualifications of employees; and (iv) customer and supplier information, including identities and characteristics, product sales and purchase history or forecasts, and agreements."

12.     Within Defendants' HR Policy and Procedure Guidelines is Defendants' Computer Hardware and Software Security Policy (the "Software Policy"), which states in part:

> Company Developed Software. Computer software developed by employees or contract personnel on behalf of the Company, or purchased for the use of the Company, is Company property and may not be distributed to outsiders unless authorized in writing by the Director of Management Information Systems.

Violations of the Software Policy subject the violator to discipline, including immediate termination.

13.     Within Defendants' Code of Ethics is Defendants' Prohibition of the Improper Use of Company Assets, which states:

> TEL's facilities, equipment, tools, materials, office supplies, and so on are to be used for the performance of the company's business. TEL board members and employees need to be aware that if these items are used for any other purpose, wasted, or removed from company facilities without permission it constitutes improper use and in some instances may even constitute criminal conduct.

> The prohibition against improper use is not limited to the above-mentioned tangible items, and also includes TEL's intangible assets such as software, internal information, customer information, and data concerning market shares and so on. For example,

installing on a home PC a copy of software that the company purchased or using a company PC for personal purposes are clear cases of improper usage of company assets, and TEL board members and employees must not conduct such improper usage.

14.     Despite the Confidentiality Agreement, Certification, Software Policy, and Code of Ethics, Donahue improperly and without authorization or consent, accessed, retained, and displayed approximately sixteen (16) confidential and proprietary Tokyo Electron videos ("Videos") on his personal website, http://tsdonahue.com ("Website").  The Website was made available to the general public.  Upon belief, the Videos were displayed on the Website for an extended period of time, possibly six months or more.

15.     The Videos included:

    a.  TEL Career Center Video

    b.  TEL Bottle Cap Upgrade Kit Commercial

    c.  TEL Bottle Cap Upgrade Kit Commercial (Japanese Version)

    d.  TEL Certified Used Equipment Commercial (English Version)

    e.  TEL Certified Used Equipment Commercial (Japanese Version)

    f.  IC Cup Commercial

    g.  TEL eMetrics Commercial

    h.  PS4100Z Commercial

    i.  TEL US Career Center Video

    j.  3Di Video

    k.  DSA Video

    l.  Destinations

    m.  Journey to Excellence (JTE)

    n.  Larry Smith—Introduces Core Values

    o.  Barry Mayer—Welcome to TEL Destinations Introduction Video

p.  TKMS – Completing an Online Quote Request Form

16.     The following Videos are not publicly accessible nor have Defendants displayed them publically: (a) TEL Bottle Cap Upgrade Kit Commercial; (b)TEL Bottle Cap Upgrade Kit Commercial (Japanese Version); (c) IC Cup Commercial; (d) PS4100Z Commercial; (e) Destinations; (f) Larry Smith—Introduces Core Values; (g) Barry Mayer—Welcome to TEL Destinations Introduction Video; (h) TKMS – Completing an Online Quote Request Form  (the "Trade Secret Videos").

17.     The Trade Secret Videos contain confidential and proprietary information in the form of, among other things, customer information, descriptions of and training regarding proprietary business processes, proprietary employee onboarding processes, and web based training to educate customers regarding Defendants' online customer ordering software.

18.     Tokyo Electron America, Inc. registered the following videos with the U.S. Copyright Office: (a) TEL Bottle Cap Upgrade Kit Commercial;[1] (b) TEL Bottle Cap Upgrade Kit Commercial (Japanese Version);[2] (c) TEL Certified Used Equipment Commercial (English Version);[3] (d); IC Cup Commercial;[4] (e) PS4100Z Commercial;[5] (f) Barry Mayer—Welcome to TEL Destinations Introduction Video;[6] and (g) TKMS – Completing an Online Quote Request Form[7] (the "Copyright Videos").

19.     Upon information and belief, Donahue has since segmented the Website into a public version and a version reserved solely for Website "members."

---

[1] Copyright number PAu003726955.
[2] Copyright number PAu003726937.
[3] Copyright number PAu003726953.
[4] Copyright number PAu003726940.
[5] Copyright number PAu003726936.
[6] Copyright number PAu003726941.
[7] Copyright number PAu003726950.

## CAUSES OF ACTION

### COUNT 1: COPYRIGHT INFRINGEMENT, 17 U.S.C. § 101, ET SEQ. BY TEA

20.     Tokyo Electron America, Inc. realleges and incorporates by reference the allegations made in the above paragraphs.

21.     The Copyright Videos are TEA's original works of authorship and are registered with the U.S. Copyright Office.  The Copyright Videos are fixed in a tangible medium of expression, namely as an audiovisual work.

22.     Donahue infringed on TEA's copyrights by distributing, using, reproducing, and/or publicly displaying the Copyright Videos to the general public through the Website.

23.     As a proximate result of Donahue's copyright infringement, TEA has and will continue to suffer injury.

24.     TEA is entitled to damages and profits in accordance with 17 U.S.C. § 504 and other applicable law due to Donahue's infringement of TEA's copyright-protected interest in its Copyright Videos.

25.     TEA is entitled to costs and attorneys' fees in accordance with 17 U.S.C. § 505 and other applicable law on account of Donahue's infringement of TEA's copyright-protected interest in its Copyright Videos.

26.     Donahue knowingly and willfully infringed on TEA's copyright-protected interest in its Copyright Videos.

27.     Donahue's infringement of TEA's copyright-protected interest in its Copyright Videos is believed to be continuing and ongoing, subjecting TEA to irreparable harm, for which TEA does not have an adequate remedy at law.

28.     In view of the foregoing, TEA is entitled to injunctive and other equitable relief in accordance with 17 U.S.C. § 502 and other applicable law on account of Donahue's continuing infringement of TEA's copyright-protected interest in its Copyright Videos, including without limitation an injunction ordering the Defendants to remove the videos from the Website, including from the portion of the Website reserved for "members."

### COUNT 2: COMPUTER FRAUD UNDER THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

29.     Defendants reallege and incorporate by reference the allegations made in the above paragraphs.

30.     Donahue accessed, without authority or exceeding his authority, Defendants' computer network, which is used in interstate commerce. Donahue downloaded from Defendants' computer network Videos containing confidential and proprietary information, and later reposted them on his publicly accessible Website.

31.     Donahue's actions were in violation of his Confidentiality Agreement, Certification, and Defendants' Software Policy and Code of Ethics. Further, the Trade Secret Video's information integrity was damaged when Donahue compromised the information's protected state.

32.     Donahue's actions caused Defendants damages for lost business, loss of good will, and the loss of integrity of Defendants' trade secrets in an amount in excess of $5,000 to be determined at trial, including but not limited to the amount of money incurred and to be incurred in connection with the investigation and forensics examination in uncovering Donahue's unlawful actions and the prorated wages of the employees charged with investigating Donahue's unlawful actions.

33.     As a direct and proximate result, Defendants have suffered damage, irreparable harm and economic loss, together with interest and costs, and will continue to suffer damage and economic loss, in an amount to be determined at trial.

### COUNT 3: BREACH OF CONTRACT WITH TEA

34.     TEA realleges and incorporates by reference the allegations made in the above paragraphs.

35.     The Confidentiality Agreement—attached as Exhibit 1—between Donahue and TEA is a valid and enforceable agreement.

36.     Donahue breached the Confidentiality Agreement by disclosing to the general public, by way of his Website, the contents of the Videos.

37.     Donahue's breach of the Confidentiality Agreement has injured TEA, including, but not limited to, lost business, loss of good will, and the loss of integrity of TEA and its affiliates' trade secrets and confidential and proprietary information.

### COUNT 4: CIVIL CAUSE OF ACTION FOR BREACH OF COMPUTER SECURITY CRIMES – TEX. CIV. PRAC. REM. CODE CHAPTER 143

38.     Defendants reallege and incorporate by reference the allegations made in the above paragraphs.

39.     Donahue knowingly accessed Defendants' computer network and/or computer system to access, store, and publicly display confidential and proprietary information to non-employees.

40.     Donahue did not have the effective consent of Defendants to access Defendants' computer network and/or computer system for the purpose of storing and ultimately publicly displaying its confidential and proprietary Videos.

41.     This conduct constitutes a violation of Chapter 33 of the Texas Penal Code. Donahue's actions were carried out knowingly and intentionally.

## COUNT 5: MISAPPROPRIATION UNDER THE TEXAS UNIFORM TRADE SECRETS ACT (TUTSA); TEX. CIV. PRAC. REM. CODE CHAPTER 134A

42.     Defendants reallege and incorporate by reference the allegations made in the above paragraphs.

43.     The Trade Secret Videos constitute trade secrets under TUTSA because Defendants took reasonable efforts to keep the Videos secret and the Videos have an actual or potential independent economic value to third parties because their content is unknown and not readily ascertainable by proper means.

44.     Donahue acquired the Trade Secret Videos under circumstances giving rise to a duty to maintain the secrecy of or to limit the use of the Trade Secret Videos.  Donahue acquired the Trade Secret Videos by and with knowledge of improper means by breaching his Confidentiality Agreement and Certification and violating Defendants' Software Policy and Code of Ethics.   Donahue willfully and maliciously disclosed the Trade Secret Videos to the general public without the express or implied consent of Defendants.

45.     As a direct and proximate result, Donahue was unjustly enriched and Defendants have suffered irreparable damages and economic loss, together with interest and costs, and will continue to suffer damage and economic loss, in an amount to be determined at trial.

## IV.
## REQUEST FOR RELIEF

Defendants, as Counter-plaintiffs, pray for the following relief on their counterclaims:

46.     That Donahue, his agents and all those acting in concert with him be enjoined from infringing on the copyrights of TEA in any manner, and from utilizing, copying, distributing, publishing, selling, or marketing any copies of the Copyright Videos;

47.     That Donahue, his agents and all those acting in concert with him be enjoined from utilizing, copying, distributing, publishing, selling, or marketing any copies of the Trademark Videos;

48.     That Donahue be required to remove all Videos from the Website, including from the portion of the website reserved for "Members;"

49.     That Defendants recover actual damages; exemplary damages; pre-and post-judgment interest; attorneys' fees and costs of court; and any other relief to which they may be entitled.

## V.
### PRAYER

Defendants request that Plaintiff's Original Petition and other related pleadings in this matter be dismissed in their entirety; that Plaintiff takes nothing against Defendants; that Defendants be awarded their damages and reasonable attorneys' fees and court costs; and for such further relief, at law and in equity, to which Defendants may be justly entitled.

Respectfully submitted, this 16th day of June, 2014.

Respectfully submitted,

/s/ Michael W. Fox
Michael W. Fox
Texas State Bar No. 07335500
michael.fox@ogletreedeakins.com
Daniel A. Verrett
Texas State Bar No. 24075220
daniel.verrett@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
301 Congress Avenue, Suite 1150
Austin, Texas  78701
512.344.4700
512.344.4701 facsimile
**ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this day served, via certified mail and facsimile, a true and correct copy of the foregoing to:

John F. Melton
MELTON & KUMLER, L.L.P.
2705 Bee Cave Road, Suite 220
Austin, Texas 78746
(512) 330-0067 (fax)

SO CERTIFIED, this the 16th day of June, 2014.

 /s/ Michael W. Fox
Michael W. Fox/Daniel A. Verrett

# Exhibit 1

### Employee Confidential Information Non-Disclosure Agreement

In consideration of employment with Tokyo Electron America, Inc. ("TEA"):

1. <u>Non-Disclosure</u>

    a) The undersigned employee ("Employee") will not disclose to anyone outside of TEA, or use in other than TEA's business, either directly or indirectly, any Confidential Information (as hereinafter defined) either during or after Employee's TEA employment, except with TEA's prior written permission.

    b) Employee understands that his/her legal obligations not to use or disclose Confidential Information of TEA remain in effect after the termination of Employee's employment with TEA and that if, at any time in the future, Employee wishes to disclose or use Confidential Information or if Employee should be in doubt as to whether any information may be Confidential Information, Employee will, prior to any disclosure or use, obtain written permission from TEA to do so. Employee further understands that such permission may be refused if TEA, in its sole discretion believes that the information proposed to be used or disclosed is Confidential Information.

2. <u>Confidential Information</u> . "Confidential Information" means any information of TEA or its affiliates (including, without limitation, Tokyo Electron Limited) or of TEA's customers and their affiliates, whether oral or written, that is not generally known outside of the disclosing parties' organization, including but not limited to information relating to its financial condition, contracts, business, business practices, officers, directors, employees, products, product development, research, business operations, business plans (including but not limited to sales and marketing plans), customer lists, prices and pricing methods, trade secrets, distribution, manufacturing and production data, techniques and process information and other material data of any kind, nature, or description, together with analyses, compilations, studies or other documents disclosed through any means from TEA to Employee before or after date hereof, either directly or indirectly. Confidential Information shall not, however, include (i) information that is or becomes generally available to the public other than as a result of a disclosure by Employee in violation of this Agreement; or (ii) information that becomes available to Employee on a nonconfidential basis from a source other than TEA or its representatives, provided such source is not bound by a confidentiality agreement with TEA or its affiliates or otherwise prohibited from transmitting the information by a contractual, legal or fiduciary duty. In addition, nothing herein shall prevent Employee from disclosing Confidential Information to the extent Employee is required to do so by court order or other judicial process, so long as Employee notifies TEA in writing promptly upon learning that disclosure will be required and, if TEA elects to contest such disclosure, Employee cooperates with TEA in preventing such disclosure.

3. <u>Return of Confidential Information</u>. Upon termination of employment or upon request of TEA, Employee shall promptly return to TEA all Confidential Information within his/her possession and will not retain any copies, extracts, or other reproductions in whole or in part of such written materials.

4.   <u>Definition of Affiliates</u>.  As used in this Agreement, the term "affiliate" shall have the meaning given that term in the Rules and Regulations of the Securities and Exchange Commission under the Securities Act of 1993, as amended, and shall further include all present and future affiliates of the parties, or any other entity referred to herein.

5.   <u>Remedies</u>.  Employee understands and agrees that (a) the remedies at law for his/her violation of any of the covenants or provisions of this Agreement will be inadequate, (b) such violations will cause irreparable injury to TEA and its affiliates within a short period of time, (c) TEA and its affiliates shall be entitled to specific performance and to preliminary and permanent injunctive relief against such violation without the necessity of proving such damages, and (d) neither TEA nor its affiliates shall be required to grant any security or post any bond in connection with such remedies, any requirements for same being hereby waived.  Such specific performance and injunctive relief shall be in addition to, and in no way in limitation of, any and all other remedies that TEA shall have at law and in equity for the enforcement of the covenants and provisions of this Agreement.

6.   <u>Miscellaneous</u>.  This Agreement shall be governed by the laws of the State of Texas, excluding choice of law and conflict of law principles.  This Agreement supersedes any contemporaneous or previous oral or written communications, representations, understandings, or agreements with TEA or any official or representative thereof, on the subject matter herein.  This Agreement is binding upon and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns.  If any provision of this Agreement is determined to be invalid or unenforceable by final judgment of a court of competent jurisdiction, it shall not effect the remainder of this Agreement, but shall be automatically modified to the minimum extent necessary to render it valid and enforceable.  This Agreement shall not be construed strictly against either party and both parties agree to use their good faith efforts to carry out the purposes and intent of this Agreement.  <u>Employee acknowledges receipt of a copy of this Agreement and that Employee has been given sufficient time to review and consider the provisions of this Agreement.</u>

Executed this _28_ day of _MAY_____, 1996

EMPLOYEE                                    TOKYO ELECTRON AMERICA, INC.


_Timothy M. Donahue_____              _Barry R. May_____
Print Name: _TIMOTHY M. DONAHUE_        Barry R. Mayer
                                        Vice President, Administration

M̶ᴛ BE RETURNED TO
HR WITHIN 48 HOURS
OF DATE RECEIVED.
DATE FORWARDED: _9-13-96_

## AGREEMENT

## FOR

## CONFIDENTIAL INFORMATION AND INTELLECTUAL PROPERTY

This Agreement made and entered into this __16 TH__ day of __SEPTEMBER__, 199_6_, by and between TOKYO ELECTRON AMERICA, INC., having principal office at 2400 Grove Blvd., Austin, Texas 78741, U.S.A. (hereinafter referred to as TEA) and __TIMOTHY M. DONAHUE__, an employee of TEA residing at __4411 SPICEWOOD SPRINGS RD. APT. 1606   AUSTIN, TX  78759__ (hereinafter referred to as Employee) with respect to Employee's obligations under Employment Agreement between TEA and Employee dated __9/16/96__ (hereinafter referred to as Employment Agreement).

In consideration of the mutual covenants contained herein, the parties agree as follows:

1.    **DEFINITIONS**

(a)    "Company" means TEA, its subsidiaries, its parent company TOKYO ELECTRON LIMITED, and any other companies in which TOKYO ELECTRON LIMITED now or hereafter owns more than twenty percent of the outstanding shares of common stock.

(b)    "Information" means all information, tangible or intangible, which is secret, confidential or proprietary in nature and which concerns business or affairs of Company, its customers or suppliers, including, but not limited to, inventions, know-how, technical and business information and data, products, processes, developments and plans.

(c)    "Employment" means the employment of Employee by TEA.

2.    **CONFIDENTIALITY**

Employee hereby acknowledges and agrees that the Information is the proprietary right and trade secret of Company.    During the Employment and thereafter, Employee shall treat the Information as confidential. Employee shall not disclose the Information to any person, firm or corporation.    The foregoing confidential obligation of Employee shall not be applicable to the Information which is, or hereafter will become, generally available to the public through no fault of Employee.    Employee also agrees to treat all U.S. Government classified information and other foreign country material in the manner specified by applicable government regulations.

- 1 -

**3.** **TANGIBLE ITEMS**

Employee agrees that all documents, computer memories and other tangible items, including any copies thereof, containing the Information which shall come into Employee's custody or possession ("Tangible Items") shall be and are the exclusive property of Company.  Employee shall use the Tangible Items only in the performance of Company duties and shall deliver the Tangible Items to Company upon termination of the Employment.

**4.** **ASSIGNMENT AND COOPERATION**

(a)     Employee hereby assigns to Company all the right, title and interest in and to all inventions, improvements, discoveries or technical developments, whether or not patentable, which Employee, solely or jointly with others, may conceive or reduce to practice during the Employment and (i) which relate to present or prospective activities of Company with which Employee becomes acquainted during the Employment, or (ii) which are conceived or first actually reduced to practice (1) in the utilization by Company of Employee's services in a technical or professional capacity in the areas of the research, development, marketing, management, engineering or manufacturing, (2) pursuant to any project of which Employee is a participant or member and such project is either financed or directed by Company, or (3) at Company's expense, in whole or in part.

(b)     Employee shall promptly disclose to and cooperate with Company, during the Employment and thereafter, with respect to the assignment of intellectual property, the procurement, establishment and maintenance of Company's rights and interests in said inventions, improvements, discoveries or developments throughout the world.  Employee shall sign all papers which Company may deem necessary or desirable for the purpose of vesting Company with such rights.  The expense required for above cooperation shall be borne by Company.  In the event that Company takes any action or is a party to any proceedings with any third parties in connection with such rights anywhere in the world, even after the Employment, Employee shall cooperate with Company, on its request and at its expense, to settle or prosecute such actions and proceedings.

(c)     The Paragraphs (a) and (b) of this Article shall not apply to any inventions, improvements, discoveries and developments for which no Information, Tangible Items, equipment, supplies or facility of Company was used and which were conceived or reduced to practice by Employee entirely on Employee's own time, and (i) which do not relate (1) to the business of Company or (2) to Company's actual or demonstrably anticipated research or development, or (ii) which do not result from any work performed by Employee for Company.

**5.** **INFORMATION OF OTHER COMPANY**

Employee agrees not to disclose to Company any confidential information of any previous employer with which Employee has worked before the Employment.  Employee shall not use any confidential information of any

previous employer in the performance of Employee's work for Company. Employee agrees to immediately notify Company if circumstances should arise which would cause Employee to use any confidential information of any previous employer in the performance of Employee's work for Company.

**6.      RECORDS**

Employee agrees to make records of the detail of Employee's daily work at or for Company in an authorized Inventor's Notebooks supplied and kept by Company. Inventor's Notebooks shall be the property of Company and their contents shall be considered the Information. The employees and others authorized by Company will be given access to Inventor's Notebooks when necessary.

**7.      FILE APPLICATION**

If, during the Employment or two years thereafter, an application for an intellectual property right is filed by or for Employee anywhere in the world and the subject matter thereof is related to present or prospective activities of Company, or of any supplier or customer of Company, the subject matter covered by the application shall be presumed to have been conceived during the Employment.

**8.      MISCELLANEOUS**

(a)      Assignment

This Agreement is not assignalble or transferable by Employee, in whole or in part, except with the written consent of TEA.

(b)      Notices

Any notices provided for under this Agreement shall be deemed effective when delivered in person or three (3) days after deposit in the mails by registered or certified first class mail postage prepaid and addressed to the respective address listed in the introduction of this Agreement, or to such different address as either party may designate in writing to the other party.

(c)      Disclaimer of Agency

This Agreement shall not constitute Employee the legal representative or agent of Company, nor shall Employee have the right or authority to assume, create or incur any liability or any obligation of any kind, expressed or implied, against or in the name of or on behalf of Company.

(d)      Modifications

No modification or amendment of this Agreement or any associated agreement, and no waiver of any of the terms or conditions hereof or thereof, shall be valid or binding unless made in writing duly executed by both parties.

(e)      Entire Agreement

- 3 -

This Agreement and related agreements executed concurrently herewith supersede all negotiations, commitments and writings prior to the date hereof pertaining to the subject matter of this Agreement and such related agreements.

      (f)      Separability

In case any one or more of the provisions, or portions of provisions, of this Agreement shall be deemed by any governmental authority to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions, or portions of provisions, contained herein shall not be in any way affected or impaired thereby.

This agreement should not be deemed or construed to be an employment contract, either expressed or implied, between TEA and you. It is understood that employment at TEA is "at will." This means either you or TEA may terminate the employment relationship for any reason at any time "other than for a reason expressly prohibited by law."

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above set forth.

TOKYO ELECTRON AMERICA, INC.      EMPLOYEE

Barry R. Mayer
Vice President, Administration

Sign: _Timothy M. Donahue_
Print Name: _TIMOTHY M. DONAHUE_
Date: _9/16/96_

- 4 -

# Exhibit 2



Tokyo Electron US Holdings, Inc.

# Employee Termination Certification

## Company Copy

| Employee Name | Employee ID No. | Termination Date |
|---|---|---|
| Tim Donahue | 967068 | 06/03/13 |

This is to certify that I do not have in my possession, and have either destroyed or returned all Confidential Information (as defined below) and copies of such information, and all other documents or materials regardless of media (electronic, computer disks, paper, etc.), and other property belonging to Tokyo Electron US Holdings, Inc., it's subsidiaries and related affiliates (collectively "TEL US").

I further certify I have complied with and will continue to comply with all the terms and conditions of the Confidential Information and Intellectual Property Agreement, to preserve as confidential and not to disclose to any third party or use any and all Confidential Information of TEL US (existing, potential or future).  Confidential Information includes, without limitation, any and all information of TEL US concerning (i) methods, processes, formulas, trade secrets, procedures, innovations, inventions, discoveries, improvements, research or development and test results, specifications, data, know-how, computer programs, software, electronic codes, mask works, inventions, innovations, patents, patent applications, formats, formulas and all improvements, know-how, data, rights, and claims related to the foregoing; (ii) marketing plans, business plans, strategies, forecasts, unpublished financial information, budgets, projections, product plans and pricing; (iii) personnel information, including organizational structure, salary, and qualifications of employees; and (iv) customer and supplier information, including identities and characteristics, product sales and purchase history or forecasts, and agreements.

I understand that for purposes of this Employee Termination Certificate that Confidential Information is to be broadly defined, and includes all information that has or could have commercial value or other utility in the business in which TEL US is engaged or contemplates engaging, and all information of which the unauthorized disclosure could be detrimental to the interests of TEL US, whether or not such information is identified as Confidential Information by TEL US.

I also understand this Confidential Information includes not only information disclosed by TEL US to me, but also information developed or learned by me during the course of my employment with TEL US.

I acknowledge that I: (i) read and understand this Employee Termination Certificate; (ii) am fully aware of its legal effect; and (iii) have entered into it freely and voluntarily and based on my own judgment and not on any representations or promises other than those contained in this Employee Termination Certificate.

This Employee Termination Certificate constitutes the entire agreement between me and TEL US regarding its subject matter, and supersedes any previous or contemporaneous agreements, whether oral or written.  No modification to this Employee Termination Certificate shall be binding on either TEL US or me unless such modification is in writing and is signed by an authorized representative of either TEL US or myself.

_____
Employee Signature

_6/3/2013_
Date

5