



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**TIMOTHY DONAHUE,**

          **Plaintiff,**

-vs-                                    **Case No. A-14-CA-563-SS**

**TOKYO ELECTRON AMERICA, INC. and**
**TOKYO ELECTRON US HOLDINGS, INC.,**
          **Defendants.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Timothy Donahue's Motion to Remand [#5], Defendants Tokyo Electron America, Inc. and Tokyo Electron US Holdings, Inc.'s Response [#6], Plaintiff Donahue's Reply [#9], and Defendants' Sur-Reply [#12]; Counter Defendant Donahue's Motion for Partial Summary Judgment [#13]; Counter Defendant Donahue's Motion to Dismiss [#14], and Counter Plaintiffs Tokyo Electron America, Inc. and Tokyo Electron US Holdings, Inc.'s Response [#17]; and Counter Plaintiffs Tokyo Electron America, Inc. and Tokyo Electron US Holdings, Inc.'s Rule 56(d) Motion to Deny Counter Defendant Donahue's Motion for Partial Summary Judgment [#15], and Counter Defendant Donahue's Response [#16].[1] Having considered the documents, the file as a whole, and the governing law, the Court enters the following opinion and orders GRANTING IN PART and

---

[1]Tokyo Electron America, Inc. and Tokyo Electron US Holdings, Inc. have been sued by Donahue, and they are also are suing Donahue on their own counterclaims. Consequently, the Court refers to them as "Defendants" when discussing Donahue's claims against them, and "Counter Plaintiffs" when discussing their counterclaims against Donahue.



DENYING IN PART the motion to remand, DENYING the motion for partial summary judgment, and DENYING the motion to dismiss.

**Background**

Plaintiff Timothy Donahue worked as a Media Producer for Defendant Tokyo Electron America, Inc. (Tokyo Electron) for seventeen years helping the company make videos and advertisements. In June 2013, Tokyo Electron fired Donahue. Donahue believes he was fired due to his age. Tokyo Electron denies the firing had anything to do with age and rather contends it was due to performance. Tokyo Electron claims to have placed Donahue on a Performance Improvement Plan (PIP) in April 2013, and when his work did not improve during the PIP period, Tokyo Electron elected to terminate his employment.

Based on this series of events, Donahue filed an age discrimination claim with the Texas Work Force Commission and the Equal Employment Opportunity Commission. Ultimately, after receipt of a right-to-sue letter, Donahue filed a lawsuit in Texas state court against Defendants Tokyo Electron America, Inc. and Tokyo Electron US Holdings, Inc., asserting age discrimination under the Texas Labor Code, and claiming all individual officers of Tokyo Electron were liable for Donahue's damages under the Texas Tax Code. *See* Notice of Removal [#1-2], Ex. 2 (Orig. Pet.), ¶¶ 5.1–.4. The lawsuit was served on Defendants on April 28, 2014. *See id.* [#1], ¶ 1. All parties in this case are citizens of Texas for purposes of diversity jurisdiction. *See* Orig. Pet., ¶¶ 2.1–.3.

After Donahue's termination, another series of events unfolded, which ultimately formed the basis for counterclaims asserted by Defendants. Apparently, after Donahue left Tokyo Electron, he hosted certain videos he had made during his employment with Tokyo Electron on his personal website, which is accessible by the general public. On January 6, 2014, general counsel for Tokyo

Electron sent Donahue a cease-and-desist letter, indicating the posting of these videos, which contained Tokyo Electron's confidential and proprietary information, was in violation of the Agreement for Confidential Information and Intellectual Property executed on September 9, 1996 (Confidentiality Agreement). *See* Mot. Remand [#5-1], Ex. 1. Tokyo Electron further reminded Donahue he had signed the Employee Termination Certification (ETC) on June 3, 2013, making clear the confidentiality obligations were to be honored post-termination. *Id.* In addition, Tokyo Electron told Donahue that, under the ETC, Donahue certified he had returned, and no longer had in his possession, any of Tokyo Electron's confidential information, and the posting of the videos reflected a violation of this certification. *Id.* Finally, Tokyo Electron asserted Donahue's behavior violated its intellectual property rights and demanded Donahue remove the videos immediately. *Id.*

On January 21, 2014, Donahue's counsel responded via letter indicating, while there was disagreement as to the intellectual property rights asserted, he had removed the videos from his website. Donahue claims to have used the videos merely as a portfolio with which to obtain a new job. *See id.* [#5-2], Ex. 2. On April 4, 2014, outside counsel for Tokyo Electron, John Melton, sent Donahue a letter regarding Donahue's potential age discrimination lawsuit. *See id.* [#5-3], Ex. 3. Melton rejected this lawsuit as baseless, and also stated his understanding Donahue had been in contact with Tokyo Electron's general counsel in a separate series of communications regarding potential violations by Donahue of "trade secret, copyright infringement, and confidentiality obligations." *Id.* Melton further stated if a lawsuit were filed by Donahue for age discrimination, a counterclaim would be filed against him for the alleged post-termination activity. *Id.*

After Defendants were served with Donahue's age discrimination lawsuit on April 28, 2014, they timely filed their Original Answer on May 16, 2014, and did not include any counterclaims.

*See* Notice of Removal [#1-2], Ex. 2 (Orig. Answer).  On June 10, 2014, Tokyo Electron officially registered its copyrights in the videos at issue with the U.S. Copyright Office.  *See id.* [#1-1], Ex. 1 (Am. Answer and Countercls.), ¶ 18.  On June 16, 2014, Defendants filed an Amended Answer and Counterclaims, in which Tokyo Electron asserted a copyright infringement and a breach of contract counterclaim premised on Donahue's alleged breach of the Confidentiality Agreement.  Both Defendants asserted counterclaims for computer fraud under the Computer Fraud and Abuse Act (CFAA), breach-of-computer-security crimes under the Texas Civil Practice and Remedies Code (TCPR), and misappropriation under the Texas Uniform Trade Secrets Act (TUTSA).  *See id.*, ¶¶ 20–45.  On this same day, Defendants filed their notice of removal, and removed the case to this Court.  *See id.* [#1] (Notice of Removal).

Three days later, Donahue filed a Motion to Remand [#5], arguing the removal was untimely, and, in the alternative, the Court should not exercise supplemental jurisdiction over his age discrimination claim.  In addition, Donahue has since filed a Motion for Partial Summary Judgment [#13], contending Tokyo Electron has no evidence of damages concerning its copyright claim, and a Motion to Dismiss [#14] the Defendants' CFAA claim under Rule 12(b)(6).  Finally, Tokyo Electron has a filed Motion to Deny Donahue's Motion for Partial Summary Judgment [#15] because the discovery period in this case has yet to begin.

**Analysis**

## I.    Motion to Remand

Defendants removed this action pursuant to 28 U.S.C. §§ 1441, 1446, and 1454.  *See* Notice of Removal, at 1.  Any ambiguities are construed against removal and in favor of remand to state court.  *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing

*Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir.2000)). The party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper. *Id.* (citations omitted). Section 1441 provides, "[e]xcept as otherwise expressly provided by Act of Congress," a defendant can remove to federal court any civil action brought in state court over which the district court would also have had original jurisdiction. 28 U.S.C. § 1441(a). Section 1441(a) does not directly provide the basis for removal in this case because this Court does not have original jurisdiction over Donahue's state law age discrimination claim, but it does so indirectly as Congress has indeed "otherwise expressly provided" via 28 U.S.C. § 1454. Section 1454 provides: "A civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents . . . or copyrights may be removed to [federal court]." 28 U.S.C. § 1454(a). Accordingly, Defendants' basis for removal is § 1454 because they asserted a counterclaim for copyright infringement.

Section 1454 was recently enacted in September 2011 as part of the Leahy–Smith America Invents Act (AIA). *See* Pub. L. No. 112-29, § 19(c)(1), 125 Stat. 332 (codified as 28 U.S.C. § 1454). While perhaps not the most glamorous component of the AIA, § 1454 certainly marks a clear change in removal procedure. Traditionally, a plaintiff could not get into federal court simply because an anticipated defense to the plaintiff's state law claim would raise a federal question. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 153–54 (1908). Generally, federal question jurisdiction is present "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." *Id.* at 152. This "longstanding" principle is known as the "well-pleaded complaint" rule. *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (citing *Mottley*, 211 U.S. at 152). In *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, the U.S. Supreme Court

expressly applied this rule to counterclaims, holding that "a counterclaim—which appears as part of the defendant's answer, not as part of the plaintiff's complaint—cannot serve as the basis for 'arising under' jurisdiction." 535 U.S. 826, 831 (2002).

*Holmes Group*, however, involved not just any counterclaim—the defendant had asserted a counterclaim arising under federal patent law. *See id.* at 827. The rule articulated in *Holmes Group* meant state courts could end up adjudicating a significant amount of federal patent claims (and other federal claims like copyright). In response, Congress passed the so-called "*Holmes Group* fix," included in the AIA. Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 FED. CIR. B. J. 539, 539–40 (2012) (citing H.R. Rep. No. 112-98, at 81 (2011)). Among other things, the "fix" added § 1454 under which a defendant with a patent or copyright counterclaim is no longer bound by a plaintiff's well-pleaded state law complaint to litigate in a state court.

## A.    Timeliness of Removal

Section 1454, however, does not fix open indefinitely the federal courts to defendants with a copyright counterclaim as it specifically provides:

> The removal of an action shall be made in accordance with section 1446, except that if the removal is based solely on this section—
>
> (1) the action may be removed by any party; and
>
> (2) the time limitations contained in section 1446(b) may be extended at any time for cause shown.

28 U.S.C. § 1454(b). Section 1446 provides the procedures and deadlines applicable to other removals. At first blush, the application of § 1446 in a § 1454 removal seems straightforward, but a closer review of § 1446 reveals fundamental tension between these two sections.

The timeliness of removal is controlled by 28 U.S.C. § 1446(b), and the Fifth Circuit has summarized this section as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whatever period is shorter . . . .

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed . . . more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).  Restated, if the initial pleading sets forth a claim that triggers the removal clock, the defendant must file notice of removal within thirty days of receiving it.  If the initial pleading did not trigger the thirty-day removal clock, a notice of removal must be filed within thirty days of the defendant's receipt of a document from which it may ascertain that the case is, or has become, removable.  *Id.*  In any event, removal may not occur more than one year after commencement of the action.  *Id.*

*Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397–98 (5th Cir. 2013) (footnotes omitted).

Section 1446 presumes and reenforces a procedural dynamic whereby a plaintiff controls the forum with his pleadings, and a defendant may only remove a case once the plaintiff has introduced into the case some document from which the defendant may ascertain the case is removable.  If the plaintiff does so, then the defendant has thirty days in which to timely remove the case.  Stated differently, § 1446 is premised on the well-pleaded complaint rule, and accordingly does not contemplate defendants asserting counterclaims as the basis for federal question jurisdiction and removal.  But, as described above, § 1454 overruled the well-pleaded complaint rule when it comes

to certain counterclaims, and specifically allows a defendant to remove a case based on the assertion of a copyright counterclaim even if the case otherwise is completely devoid of federal jurisdiction. This inherent tension—if not total incompatibility—between § 1446 and § 1454 leaves this Court with the conundrum of trying to figure when the removal period for a § 1454 removal is triggered. Indeed, the facts of this case perfectly illustrate the problem.

In this case, the relevant dates are as follows: (1) April 4, 2014—the date of the letter from Tokyo Electron's counsel indicating they are aware as of this date (in fact, earlier than this date) that they have a potential copyright claim against Donahue for his post-termination use of Tokyo Electron's videos; (2) April 28, 2014—the date Defendants were served with Donahue's state court lawsuit; (3) May 16, 2014—the date Defendants file their Original Answer in state court; (4) June 10, 2014—the date Defendants registered their copyrights, and (5) June 16, 2014—the date Defendants filed their Amended Answer and Counterclaims, including the copyright counterclaim, as well as their Notice of Removal.

In their Notice of Removal, Defendants contend the removal is timely because the triggering date for the 30-day removal period was June 16 when they filed their counterclaims. According to Defendants, the case was not removable until they asserted the copyright counterclaim, so June 16 must be the triggering date. This view is problematic for two main reasons. First, a defendant cannot *receive* his own counterclaim as required by § 1446, so Defendants' view does not comply with the text of § 1446. Second, this interpretation would effectively read § 1446 out of § 1454. The

thirty-day deadlines from § 1446 would mean little if a defendant could decide when to trigger the removal clock by asserting a counterclaim in state court potentially at any point during the litigation.[2]

Donahue, on the other hand, argues the triggering date was April 28, the date Defendants were served with his lawsuit. Donahue highlights the fact Defendants knew, at least as of April 4, that they had a copyright claim to assert against Donahue, and this knowledge, coupled with service of the lawsuit, was sufficient to trigger the removal clock, starting on April 28. Since Defendants did not remove until June 16, the removal was untimely. The Court sees a few problems with this view as well. As an initial matter, documents exchanged between the parties prior to the initial pleading may not constitute "other paper" from which the defendant first ascertains the case is removable under § 1446. *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164 (5th Cir 1992). In *Chapman*, a diversity case, the court considered whether documents received by a defendant prior to the initial pleading which gave notice that the amount in controversy requirement was satisfied were sufficient to trigger the removal clock when the initial pleading itself did not provide notice of the amount in controversy. *Id.* at 163–64. The court rejected consideration of pre-litigation documents as directly contradicting the text of § 1446. *Id.* Moreover, the Fifth Circuit was concerned about courts trying to determine what defendants knew at the time they received the initial pleading and what the defendant should have known had it exercised due diligence. *Id.* For

---

[2]Defendants have alternatively argued the triggering date is June 10—the date they registered their copyrights with the U.S. Copyright Office. Under 17 U.S.C. § 411(a), "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Defendants argue they did not have a cognizable copyright claim until they registered their copyrights, and therefore they argue they did not have a "removable" claim until June 10, the date of registration. *See* Resp. [#8], at 4. The Court rejects this argument. First, Defendants had a copyright claim as soon as the alleged infringement occurred, and § 411(a) merely requires a plaintiff to register the copyright claim before it can institute a civil action. Second, the Court finds June 10 problematic as the triggering date for the same reason as June 16; it would give control to defendants to decide when to trigger the removal clock, thus effectively reading § 1446 out of § 1454. Defendants should not be able to delay their removal clock by choosing to either delay registration of their copyright or the filing of their copyright counterclaim.

instance, in this case, this Court should not expend resources trying to determine if Tokyo Electron knew Donahue was potentially infringing their copyrights by posting videos on his personal website post-termination, when they knew, when they should have known, and so on.

In addition, using April 28 as the triggering date is inconsistent with the text of § 1446. Under § 1446, as traditionally applied, service of the initial pleading triggers the removal clock if it sets forth a claim from which a defendant can ascertain the case is removable.  In this case, Donahue's lawsuit for age discrimination under the Texas Labor Code and liability under the Texas Tax Code gives no indication the case is removable.

If the initial pleading did not indicate the case was removable and if Tokyo Electron never received a document in the course of this litigation from which it could first ascertain this case was removable, then a strict application of § 1446 to this case means the removal clock was *never* triggered. Yet § 1454 clearly allows a defendant asserting a copyright counterclaim to remove. This discussion only highlights the fundamental inconsistency between § 1446 and § 1454.

Since the AIA is a fledgling statute, very few courts have encountered this same dilemma, but the Court has found three cases confronting this issue. *See Mirowski Family Ventures, LLC v. Bos. Scientific Grp.*, No. WDQ-13-2627, 2014 WL 2574615 (D. Md. June 5, 2014); *Andrews v. Daughtry*, No. 1:13cv408, 2014 WL 184398 (M.D.N.C. Jan. 15, 2014); *Univ. of Ky. Research Found., Inc. v. Niadyne, Inc.*, No. 13-16-GFVT, 2013 WL 5943921 (E.D. Ky. Nov. 5, 2013).[3] All

---

[3]In *Mirowski*, the court was able to avoid using both the "initial pleading" date and the "counterclaim" date as the removal timeline trigger because the defendant in the case had sent an email *during* the litigation, which "unambiguously show[ed] [the defendant's] knowledge of the basis on which the [case] might be removed." *Mirowski*, 2014 WL 2574615, at *4–5. The court seemed unfazed by the fact the defendant had sent, not received, the email because it was only concerned with whether the initial pleading and the documents exchanged in the case by the parties gave the defendant notice of the grounds for removal. *Id.* (citing *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997)). In *Daughtry*, another case relying on Fourth Circuit guidance in *Lovern*, the court similarly avoided the "initial pleading" date and the "counterclaim" date because a memorandum opinion and order of the court issued during

three of these courts were able to avoid using both the "initial pleading" date and the "counterclaim" date because there were documents exchanged in each case *during* the litigation, which reflected the defendant's knowledge of its intellectual property counterclaims, which equated to knowledge of the basis for removal under § 1454. In contrast to these three cases, the facts of this case do not include any such documents exchanged *during* the litigation, which indicate Tokyo Electron's knowledge of its copyright counterclaim. As such, the Court is left to decide between the date of service of the initial pleading and the date of the counterclaim, which, for the reasons described above, present their own unique sets of problems.

Instead of further laboring to make sense of Congress's illogical importation of § 1446 into § 1454, the Court need not actually resolve the issue because, even assuming the triggering date for this case is April 28 and the removal was untimely, the Court finds Tokyo Electron has sufficiently shown cause for extending the deadline until June 16 for the reasons described in the following section. Hopefully, the above discussion will flag this problem for any relevant persons paying attention, and Congress will amend § 1454 to resolve its internal inconsistency.

## B.    "Cause Shown"

Assuming without deciding Defendants' notice of removal was untimely, § 1454 allows a court to extend the deadlines under § 1446 "at any time for cause shown." 28 U.S.C. § 1454(b)(2). The provision does not define "cause shown," but other courts have interepreted its meaning. A

---

the litigation was a writing from which the defendant could ascertain his copyright claim and the removability of the case. *Daughtry*, 2014 WL 184398, at *5. In *Niadyne*, the court once again avoided the "initial pleading" date and the "counterclaim" date because one of the defendant's own briefs in the case indicated he clearly had knowledge of his patent counterclaim earlier than when he actually filed the counterclaim. *Niadyne*, 2013 WL 5943921, at *9. Similar to the Fourth Circuit cases, the court in *Niadyne* stated "it is the defendant's 'notice of facts that lead to a possibility of removal' that triggers the beginning of the thirty-day countdown, rather than the defendant's receipt of a statement containing information about removability from another source, such as the plaintiff or the court." *Id.* at *7 (quoting *Holston v. Carolina Freight Carrier Corp.*, 936 F.2d 573, 1991 WL 112809, at *3 (6th Cir. 1991) (unpublished)).

Louisiana district court concluded that "[w]hile there is no authority on what constitutes 'cause shown' . . . at a minimum, the standard imposes some burden on the removing party to justify why its tardiness should be excused." *SnoWizard, Inc. v. Andrews*, No. 12-2796, 2013 WL 3728410, at *6 (E.D. La. July 12, 2013). In *Niadyne*, the court agreed, noting that, although § 1454 "does not appear to create an incredibly high bar for an extension," the removing party does have "some burden" to show why its delay should be excused. *Niadyne*, 2013 WL 5943921, at *10. Another Louisiana district court found a plaintiff's voluntary dismissal of later-served defendants (without which the remaining defendants' removal would have been considered timely) was insufficient reason to extend the time limiations. *Benesmart, Inc. v. Total Fin. Grp., LLC*, No. 12-2645, 2012 WL 6020340, at *5 (E.D. La. Dec. 3, 2012).

In *Daughtry*, the court looked to other procedural rules governing time limitations like Federal Rule of Civil Procedure 6(b), which sets out the standard for extending deadlines in civil litigation. *Daughtry*, 2014 WL 184398, at *6. The *Daughtry* court further noted:

> Before the Rules were revised in 2007, Rule 6(b) allowed a court to extend a deadline for "cause shown"; now Rule 6(b) allows a court to extend a deadline for "good cause." The change was "intended to be stylistic only," and did not affect the substance of the rule. 4B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1165 n.9 (3d ed. 2002) (citing Advisory Committee's Note to the 2007 Amendment to Rule 6). In the Rule 6(b) context, then, "cause shown" and "good cause" are not substantively different.

*Id.*

Rule 6(b)(1)(B) provides a court may extend a deadline, for good cause, after the deadline has expired if the party seeking the extension failed to act because of "excusable neglect." FED. R. CIV. P. 6(b)(1)(B). Under Rule 6(b), "'[t]he district judge enjoys broad discretion to grant or deny an extension,' and the 'excusable neglect' standard is 'intended and has proven to be quite elastic

-12-

in its application.'" *Salts v. Epps*, 676 F.3d 468, 474 (5th Cir. 2012) (quoting WRIGHT & MILLER,

FEDERAL PRACTICE AND PROCEDURE § 1165 (collecting cases, including a number of Fifth Circuit

cases)). "Professors Wright and Miller lay out a number of factors relevant to the determination of

'excusable neglect': (1) 'the possibility of prejudice to the other parties,' (2) 'the length of the

applicant's delay and its impact on the proceeding,' (3) 'the reason for the delay and whether it was

within the control of the movant,' and (4) 'whether the movant has acted in good faith.'" *Id.*

(quoting WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1165).

With this guidance in mind, the Court concludes Defendants have shown "good cause" under

§ 1454.  As described above, under 17 U.S.C. § 411(a), a litigant shall not institute a civil action for

copyright infringement claim until the litigant has registered the copyright, and Defendants did not

register their copyrights until June 10, 2014, approximately two weeks after the assumed deadline

of May 28, 2014.[4]  Defendants then filed their Amended Answer and Counterclaims shortly

thereafter on June 16, 2014.  Applying Rule 6(b)'s factors, the Court sees minimal possibility of

prejudice to Donahue if the counterclaims related to his post-termination activity are removed to

---

[4]The U.S. Supreme Court has held the preregistration requirement of 17 U.S.C. § 411(a) is a precondition to
filing a claim that does not restrict a federal court's subject matter jurisdiction. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S.
154, 157 (2010).  In other words, if a plaintiff filed a lawsuit without registering the copyright, the Court could not
properly dismiss the claim for lack of subject matter jurisdiction, but rather under Rule 12(b)(6) for failure to state a
claim upon which relief can be granted.  In this Court's experience, litigants have filed copyright infringement claims
without having yet registered their copyrights only to complete the registration process before proceeding to trial. *See
Geoscan, Inc. of Tex. v. Geotrace Techs., Inc.*, 226 F.3d 387 (5th Cir. 2000) ("We have previously held that a plaintiff
has complied with all statutory formalities for copyright registration when the Copyright office receives the plaintiff's
application for registration, fee, and deposit.") (citing *Lakedreams v. Taylor*, 932 F.2d 1103, 1108 (5th Cir. 1991)).
Accordingly, in this case, Defendants could have filed their copyright infringement counterclaim within thirty days of
service of Donahue's lawsuit even though they had not registered their copyrights.  At the same time, Defendants would
have been risking a Rule 12(b)(6) dismissal of the copyright counterclaim upon removal.  Appreciating these concerns,
along with the minimal delay described above, the Court excuses Defendants in this instance for putting off filing their
copyright claim until they had completed registration of their copyrights.

federal court.[5]  Second, the length of delay has been minimal—approximately three weeks.  The Court further notes this is not a case where Defendants have extensively litigated in state court only to later realize (perhaps after some unfavorable treatment from the state court) they would rather be in federal court.  One of § 1446's objectives is to prevent this sort of strategic forum shopping, and there is no indication of such behavior in this case.  Third, while deciding when to register their copyrights was certainly within the control of Defendants, they do not control the U.S. Copyright Office and its registration determinations.  Fourth, whether Defendants acted in good faith cannot be ascertained from this record.  Finally, the Court notes Congress, in enacting § 1454, sought to make removal of patent and copyright claims easier in an effort to create uniformity in these bodies of law.  Allowing removal of Defendants' counterclaims realizes this aim.  Considering the minimal delay and possibility of prejudice, the Court sees no harm in extending the deadline in this instance. Therefore, the Court concludes Defendants's removal of the case was proper.

## C.    Original and Supplemental Jurisdiction

Having established the case's removability, the Court now addresses which claims should actually be litigated in federal court and which should be remanded to state court.  First, the Court has original jurisdiction over Tokyo Electron's copyright infringement counterclaim under 28 U.S.C. § 1338, and over Counter Plaintiffs' CFAA claim under 28 U.S.C. § 1331.  Second, the Court must decide whether it has supplemental jurisdiction over the state law claims and counterclaims.

Section 1367(a) provides "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case

---

[5]As explained in the next section, the Court remands Donahue's age discrimination claim back to state court.

or controversy . . . ." 28 U.S.C. § 1367(a). Stated differently, the question under § 1367(a) is whether the supplemental claims "'derive from a common nucleus of operative fact.'" *Mendoza v. Murphy*, 532 F.3d 342, 346 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). If a district court has supplemental jurisdiction, it may still decline to exercise it after consideration of the statutory factors set forth in 28 U.S.C. 1367(c) and the common law factors of judicial economy, convenience, fairness, and comity. *See Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158–59 (5th Cir. 2011) (internal citations omitted). The statutory factors are whether: "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Applying this analysis to the claims in this case, the Court has supplemental jurisdiction over Counter Plaintiffs' claims for breach of the Confidentiality Agreement, breach-of-computer-security crimes under the TCPR, and misappropriation under TUTSA. These claims derive from the same common nucleus of operative fact as the copyright infringement and computer fraud claims. Specifically, all of these claims arise from Donahue's alleged misuse of Counter Plaintiffs' videos after his employment was terminated. Furthermore, the Court sees no reason not to exercise its supplemental jurisdiction over these state law claims in light of § 1367's statutory factors or the common law factors.

In contrast, the Court does not have supplemental jurisdiction over Donahue's age discrimination claim under the Texas Labor Code. In the Court's view, this claim does not derive from the same nucleus of operative fact because Donahue's claim relates to Tokyo Electron's (and

Donahue's) behavior during Donahue's employment and its reason for firing him.  The Court fails to see how these determinations are interconnected to any alleged behavior by Donahue after he was fired.  Counter Plaintiffs contend the Court has supplemental jurisdiction because the reason they fired Donahue was due to his poor performance in creating these same videos he later improperly displayed on his personal website.  The Court agrees this "loose factual connection" exists, but disagrees it is sufficient to find these claims form part of the same case or controversy.[6]  There are two distinct controversies at issue: (1) Donahue's performance as an employee of Tokyo Electron and why he was fired; and (2) Donahue's use of videos after he was fired from Tokyo Electron in alleged violation of copyright law and other legal obligations.

In the alternative, even if the Court did have supplemental jurisdiction over Donahue's claim, it would not exercise it in light of common law factors of fairness and comity, as well as § 1367(c)'s fourth factor of "exceptional circumstances" and "compelling reasons for declining jurisdiction."  As explained above, § 1454 is a new statute, and as illustrated above, courts are still wrangling with its meaning.  Moreover, § 1454 marks a potentially significant departure from longstanding principles.  For instance, prior to § 1454, a plaintiff like Donahue had a right to control the forum for a state law age discrimination lawsuit under the well-pleaded complaint rule.  While the Court understands § 1454 to reflect Congress's desire to facilitate the flow of patent and copyright claims to federal court, it does not understand it to function as a tool for defendants to remove plaintiffs and their pure state law claims to federal court when those claims are otherwise immune to removal.

---

[6]Counter Plaintiffs suggest supplemental jurisdiction is satisfied under § 1367(a) by a "loose factual connection." Notice of Removal, ¶ 6.  For this proposition, they rely on non-binding precedent from a sister district court citing non-binding precedent from other circuits.  *See id.* (citing *Lucarino v. Con-Dive, LLC*, No. H-09-2548, 2010 WL 786546, at *2 (S.D. Tex. Mar. 5, 2010) (citing *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995); *CVPartners Inc. v. Boben*, No. C 09-689 SI, 2009 WL 1331108, at *1 (N.D. Cal. May 13, 2009))).  The Court declines to follow this "loose" standard.

Common law considerations of fairness and comity indicate an age discrimination lawsuit under state law between non-diverse parties, which is independent from the copyright claim invoking removal, should be kept in state court. Under the exceptional circumstances present in this case, the Court is compelled to decline the exercise of its supplemental jurisdiction.

In sum, the Court retains Counter Plaintiffs' claims for: (1) copyright infringement, (2) computer fraud under the CFAA, (3) breach of the Confidentiality Agreement, (4) breach-of-computer-security crimes under the TCPR, and (5) misappropriation under TUTSA. The Court REMANDS Donahue's claim for age discrimination under the Texas Labor Code (and the related liability argument under the Texas Tax Code).

## D.    Request for Attorneys' Fees

Donahue has requested attorneys' fees and expenses be awarded for having to file the motion to remand. The removal statute allows a court ordering remand to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c); *see also Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000) ("[T]he question we consider in applying § 1447(c) is whether the defendant had objectively reasonable grounds to believe the removal was legally proper."). Given the Court is only partially remanding the case and the complexity of the issues presented, Defendants had objectively reasonable grounds to remove the case. The request is denied.

## II.    Motion for Partial Summary Judgment

Donahue moves the Court to enter summary judgment against Tokyo Electron on its copyright infringement claim because there is no evidence of actual damages. In addition, Donahue argues there is no evidence of any post-registration infringement, which would entitled Tokyo

Electron to statutory damages and attorneys' fees under 17 U.S.C. §§ 504–05.  According to Donahue, he posted the videos on his website to help him find another job, and he immediately removed the videos upon Tokyo Electron's request.

Tokyo Electron has filed a Rule 56(d) motion to deny Donahue's motion for partial summary judgment.  Under Rule 56(d), the Court may deny a motion for summary judgment if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d)(1).  Tokyo Electron points out the discovery period in this case has yet to begin, and has provided a list (along with an accompanying affidavit) of discovery items it will seek once this period opens, which might potentially help it establish damages on its claims. *See* Rule 56(d) Mot. Deny [#15], at 1–2.

The Court agrees with Tokyo Electron, DENIES Donahue's motion for partial summary judgment without prejudice to refiling, and GRANTS Tokyo Electron's Rule 56(d) motion.

## III.     Motion to Dismiss under Rule 12(b)(6)

Donahue has also filed a motion to dismiss Counter Plaintiffs Tokyo Electron America, Inc. and Tokyo Electron US Holdings, Inc.'s CFAA claim under Rule 12(b)(6).[7]

---

[7]Counter Plaintiffs argue that by filing this motion to dismiss, Donahue waived his challenge to the propriety of removal. *See* Resp. [#17], at 1 n.1 (citing *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 904 (6th Cir. 1988)).  In *Lanier*, it was within the court's discretion to decide whether the plaintiff's activity in federal court prior to filing a motion to remand, which included entering into stipulations, filing requests for discovery, seeking to amend the complaint, filing a new lawsuit against the defendant in state court, demanding trial by jury, and proceeding with discovery, were sufficient to constitute waiver of any objection to the timeliness of removal. *Lanier*, 843 F.2d at 905. In this case, the instant motion to dismiss was filed weeks after the motion to remand, which was filed a mere three days after the case was removed.  Under these circumstances, the Court, within its discretion, concludes Donahue has not waived any objections to the timeliness of removal.

## A.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  In deciding a motion to dismiss under 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.*  Determining plausibility is a "context-specific task," that must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.  In deciding a motion to dismiss, courts may consider the complaint, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B.     Application**

The CFAA provides a civil cause of action for "any person who suffers damage or loss by reason of a violation of this section . . . ." 18 U.S.C. § 1030(g). The term "this section" refers to the entirety of § 1030. *See Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1157 (5th Cir. 2006). There are seven substantive criminal offenses in subsection (a). *See* 18 U.S.C. § 1030(a)(1)–(7). In addition to establishing the elements of a particular substantive offense and showing the plaintiff suffered "damage or loss" due to this offense, the plaintiff must establish one of the five types of conduct specified under subsection (c)(4)(A)(i). The only factor potentially present in this case is "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." *Id.*

First, the Court examines whether Counter Plaintiffs have alleged a violation of a particular substantive offense. Donahue complains Counter Plaintiffs failed to allege the section of the CFAA they claim Donahue violated. While Counter Plaintiffs did not specify in their Amended Answer and Counterclaims which specific subpart of § 1030(a) Donahue violated, they do, in their Response, state their allegations fit within § 1030(a)(2)(C), which makes it a criminal act to "intentionally access[] a computer without authorization or exceed[ing] authorized access, and thereby obtain . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). In addition, Counter Plaintiffs contend the allegations match § 1030(a)(5)(B), which makes it an unlawful act to "intentionally access[] a protected computer without authorization, and as a result of such conduct, recklessly cause[] damage." 18 U.S.C. § 1030(a)(5)(B).

Counter Plaintiffs have alleged, in relevant part:

Donahue accessed, without authority or exceeding his authority, Defendants' computer network, which is used in interstate commerce. Donahue downloaded from

Defendants' computer network Videos containing confidential and proprietary information, and later reposted them on his publicly accessible Website.

Donahue's actions were in violation of his Confidentiality Agreement, Certification, and Defendants' Software Policy and Code of Ethics.  Further, the Trade Secret Video's information integrity was damaged when Donahue compromised the information's protected state.

Am. Answer and Countercls., ¶¶ 30–31.

The Court finds these allegations sufficient to fall within § 1030(a)(2)(C) and (a)(5).

Second, Donahue argues Counter Plaintiffs have failed to allege "damages or loss" covered by the CFAA.  Counter Plaintiffs have alleged, in relevant part:

Donahue's actions caused [Counter Plaintiffs'] damages for lost business, loss of good will, and the loss of integrity of [Counter Plaintiffs'] trade secrets in an amount in excess of $5,000 to be determined at trial, including but not limited to the amount of money incurred and to be incurred in connection with the investigation and forensics examination in uncovering Donahue's unlawful actions and the prorated wages of the employees charged with investigating Donahue's unlawful actions.

As a direct and proximate result, [Counter Plaintiffs] have suffered damage, irreparable harm and economic loss, together with interest and costs, and will continue to suffer damage and economic loss, in an amount to be determined at trial.

Am. Answer and Countercls., ¶¶ 32–33.

The CFAA defines "damage" as: "any impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).  Counter Plaintiffs' allege Donahue took its copyrighted videos, which allegedly contain trade secrets as well, and then posted the videos on a public website thereby infringing the copyrights and disclosing the trade secrets.  These allegations describe "impairment to the integrity or availability of data . . . or information."

The CFAA defines "loss" as:

any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or

-21-

information to its condition prior to the offense, any revenue lost, cost incurred, or consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11).  Accordingly, the term loss "'encompasses only two types of harm: costs to investigate and respond to a computer intrusion, and costs associated with a service interruption.'" *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 776–77 (S.D. Tex. 2010) (Ellison, J.) (quoting *Nexans Wires S.A. v. Sark–USA, Inc.*, 319 F. Supp. 2d 468, 472–78 (S.D.N.Y. 2004), *aff'd* 166 F. App'x 559, 562–63 (2d Cir. 2006) (unpublished)); *see also Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 630 (S.D. Tex. 2011) (Rosenthal, J.) (same).

Counter Plaintiffs have summarized their three general categories of damages and losses as: "(1) loss in value of trade secrets and proprietary information by public disclosure; (2) loss of a competitive advantage, business, and good will; and (3) damages associated with the investigation in uncovering and responding to Donahue's unlawful actions."  Resp. [#17], at 6.  Only the third category fits within the definition of "loss" under the CFAA.  Therefore, Counter Plaintiffs have sufficiently alleged "loss" to survive Rule 12.

As stated above, Counter Plaintiffs, to succeed on their CFAA claim, must establish "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i).  In other words, Counter Plaintiffs will be bound at the evidentiary stage to show their claimed investigation and forensics examination in uncovering Donahue's computer intrusion (accessing and retaining videos, and then displaying videos on a public website) and the prorated wages of the employees charged with this investigation cost Counter Plaintiffs at least $5,000.

Because Counter Plaintiffs have adequately pleaded their CFAA claim, the Court DENIES Donahue's motion to dismiss this cause of action.

**Conclusion**

Operating under the assumption Defendants' removal of this case was untimely under 28 U.S.C. § 1454, the Court, nevertheless, finds the removal proper because Defendants have shown cause for extending the removal deadlines in this case.  The Court has original jurisdiction over Defendants' counterclaims under the Copyright Act and the CFAA, and exercises its supplemental jurisdiction over the other counterclaims because they arise out of the same nucleus of operative fact—specifically, Donahue's post-employment activity.  The Court, however, does not have supplemental jurisdiction over Donahue's age discrimination claims under the Texas Labor Code (and the related liability argument under the Texas Tax Code) because they arise out of a separate controversy concerning Donahue's performance during his employment and the Defendants' reasons for firing him.  Alternatively, if the Court does have supplemental jurisdiction over Donahue's claims, it declines to exercise it.  Therefore, the Court remands Donahue's claims back to state court.

Furthermore, the Court denies Donahue's motion for partial summary judgment on the copyright infringement claim on the basis there are no damages because discovery in this case has yet to begin.  Finally, the Court denies Donahue's motion to dismiss the CFAA claim as it has been adequately pleaded for Rule 12 purposes.

Accordingly,

IT IS ORDERED that Plaintiff Timothy Donahue's Motion to Remand [#5] is GRANTED IN PART and DENIED IN PART, as described in this opinion;

IT IS FURTHER ORDERED that Counter Defendant Donahue's Motion for Partial Summary Judgment [#13] is DENIED without prejudice to refiling at a later date;

IT IS FURTHER ORDERED that Counter Defendant Donahue's Motion to Dismiss [#14] is DENIED;

IT IS FURTHER ORDERED that Counter Plaintiffs Tokyo Electron America, Inc. and Tokyo Electron US Holdings, Inc.'s Rule 56(d) Motion to Deny Counter Defendant Donahue's Motion for Partial Summary Judgment [#15] is GRANTED;

IT IS FURTHER ORDERED that Plaintiff Donahue's claims for age discrimination under the Texas Labor Code, and the related argument for liability under the Texas Tax Code, against Defendants Tokyo Electron America, Inc. and Tokyo Electron US Holdings, Inc. are REMANDED to the 419th Judicial District Court of Travis County, Texas;

IT IS FINALLY ORDERED that  the Clerk of Court shall provide a certified copy of this order to the Clerk of the 419th Judicial District Court of Travis County, Texas.

SIGNED this the **27ᵗʰ** day of August 2014.

SAM SPARKS
UNITED STATES DISTRICT JUDGE